IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )| CIVIL ACTION NO.: |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| ASSORTED QUANTITY OF GOLD/SILVER ) | |
| BULLION BARS, ) | |
| VL: $41,227.00, ) | |
| ) | |
| Defendant *in Rem*. ) | |

## UNITED STATES' COMPLAINT FOR FORFEITURE *IN REM*

The Plaintiff, United States of America, brings this complaint and alleges as follows, in accordance with Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions.

## NATURE OF THE ACTION

1.     This is a civil action *in rem* to forfeit to the United States of America an Assorted Quantity of Gold/Silver Bullion bars, VL: $41,227.00 ("Defendant Property"), pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C).   The United States seeks forfeiture based upon a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Property constitutes, or is traceable to:

   a.     property furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act; proceeds traceable to such an exchange; or money used and intended to be used to facilitate a violation 21 U.S.C.

Page 1 of 19

§§841, 846;

b.   property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. §§ 1956(a)(1)(A), 1956(a)(1)(B)(i) and/or 1957;

c.   property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960;

d.   proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(c)(7); and/or

e.   proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h).

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355. This Court has *in rem* jurisdiction over the Defendant Property pursuant to:

(a)   28 U.S.C. § 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in the District of South Carolina; and

(b)   28 U.S.C. § 1355(b)(1)(B), because venue properly lies in this district pursuant to 28 U.S.C. § 1395.

## THE DEFENDANT *IN REM*

3.    The Defendant Property consists of an Assorted Quantity of Gold/Silver Bullion bars, VL: $41,227.00 ("Defendant Property") seized from Kayla Nell Tisdale ("Tisdale") by agents of the United States Drug Enforcement Agency ("DEA") on June 11, 2024, in Brunswick County, North Carolina.

4.      The Defendant Property is currently under the control of United States Marshals Service ("USMS").

5.      In accordance with the provisions of 19 U.S.C. § 1606, the Defendant Property has a total domestic value of approximately $41,227.00.

## KNOWN POTENTIAL CLAIMANTS

6.      The known individuals whose interests may be affected by this litigation are:

a.      Kayla Nell Tisdale, may have an interest in the Defendant Property because she was present when it was seized from her residence at 68 Shamrock Drive, Sunset Beach, NC.

b.      Adam Temple may have an interest in the Defendant Property, as he had previously resided at 68 Shamrock Drive, Sunset Beach, NC.

## FACTS

7.      Pursuant to the pleading requirements of Supplemental Rule G(2)(f), Plaintiff alleges that there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Property is subject to forfeiture to the United States, based in part upon the following:

## INVESTIGATION

a.      Adam Temple ("Temple") is suspected of distributing various narcotics including fentanyl and methamphetamine and is known to have previous narcotics related convictions. Temple is currently under federal indictment in the District of South Carolina for possessing with intent to distribute controlled substances in violation

of Title 21. Temple, along with Kayla Tisdale ("Tisdale"), is suspected of utilizing profits derived from the sale of illicit narcotics in the purchase of assets to conceal and promote the drug trafficking activity. Temple and Tisdale are in a relationship, shared a child together, and reside at 68 Shamrock Drive, Sunset Beach, NC.

b. Beginning in 2021, confidential sources (CS-1 and CS-2) and cooperating defendants (DEA-3 and DEA-4) identified Temple as a trafficker in narcotics. During 2021, CS-1 identified Temple as a distributor of illicit narcotics who resided in Sunset Beach, NC. In or around June 2022, Temple was arrested by local authorities. Temple gave a post-Miranda statement acknowledging his involvement in obtaining and distributing both methamphetamine and pressed or counterfeit tablets or pills which contained fentanyl. CS-2 text messages by and with Temple dating back to July 2022 showed Temple's involvement in narcotics trafficking following his June 2022 arrest. Later, CS-2, in cooperation with law enforcement authorities and equipped with an audio-visual recording device, discussed a drug debt owed by CS-2 to Temple at Temple's Sunset Beach, NC residence. CS-2 paid Temple on this debt using government-provided funds, and CS-2 discussed other narcotic distribution activities, as well.

c. On or about September 1, 2022, a search warrant was executed at Temple's Sunset Beach, North Carolina residence, where various narcotics were seized including approximately 182 grams of suspected cocaine, 153 grams of suspected methamphetamine, pressed pills, suspected heroin, over 1100 grams of suspected marijuana and THC products, two firearms, and approximately $22,501 in U.S.

currency. In a post-Miranda statement, Temple acknowledged his involvement in the distribution of narcotics and identified locations in the house where narcotics could be found.

d.    During a post-Miranda statement, Tisdale, who also resided at the Sunset Beach residence, identified a rented self-storage unit in which narcotics were stored. After law enforcement asked Temple about the storage unit, Temple acknowledged the storage unit contained narcotics. A search warrant was executed at Extra Space Storage, Building 23, Unit 55C, 108 Hwy 17, Little River, South Carolina, and authorities seized narcotics, including approximately six kilograms of pressed suspected fentanyl pills, approximately 24 grams of suspected methamphetamine, 12 pounds of suspected marijuana, approximately 2.6 pounds of suspected psilocybin mushrooms, and approximately 1750 dosage units of suspected lysergic acid diethylamide (LSD). During or about October 2023, a cooperating defendant (DEA-3) was interviewed pursuant to a proffer agreement. DEA-3 described meeting a male subject in Louisiana who utilized telephone XXX-XXX-6498 in August 2022 and referred to the male subject as "Adam or Allen." DEA-3 stated they discussed illicit narcotics and the male subject acknowledged that he sold "pills" and wanted to expand his business. Telephone XXX-XXX-6498 has been identified as a cellular telephone utilized by Temple and is further associated with a Cash App account in the name of Adam Temple (xxxxxxxx84). Furthermore, a recent subpoena identified subscriber information for telephone XXX-XXX-6498 as Adam Temple, 119 Pier Pointe Dr, Little River, South Carolina.

e.     During November 2023, a cooperating defendant, hereinafter referred to as DEA-
       4, was interviewed after being arrested on methamphetamine charges. DEA-4
       stated he/she met Temple around April 2023, and obtained 2 ounces of
       methamphetamine from him. DEA-4 provided he/she was aware that Temple dealt
       with a co-worker, who was the son of a construction company owner. DEA-4
       described that both Temple and the co-worker were employed by the construction
       company. DEA-4 was aware of the co-worker possessing 1 pound of
       methamphetamine at one time. DEA- 4 stated TEMPLE operated a 2020 White
       work truck, a Dodge Sedan and a new Dodge Durango SRT. DEA-4 stated he/she
       introduced Temple to another individual who purchased 50 fentanyl pills,½ ounce
       of cocaine and an unknown amount of "Molly" (MDMA) from him (Temple).
       DEA-4 described he/she purchased a total of approximately 4½ ounces of
       methamphetamine from Temple since they met. DEA-4 was aware Temple also
       dealt with others in the distribution of narcotics.

f.     On December 6, 2023, surveillance was being conducted on narcotics targets
       in South Carolina.   A lawful traffic stop was subsequently conducted by the
       Georgetown County Sheriff's Office on South Fraser Street and Mt. Zion
       Avenue in Georgetown County, SC on December 6, 2023.  Officers noted the
       odor of marijuana emanating from the vehicle and Temple, the driver and sole
       occupant, admitted there were "roaches" inside the vehicle. "Roaches" is a term
       used to describe the remains of a rolled marijuana cigarette.  During a search
       of the vehicle, approximately 458 grams of a crystalline substance (suspected

Crystal Methamphetamine) was located and seized along with various other items including various pills/tablets, numerous sealed plastic bags with a green leafy substance (suspected marijuana), clear plastic bags and a vacuum sealer. All of the items were seized from inside Temple's vehicle while being operated by Temple.   Tisdale purchased the vehicle from Hardee Auto Sales in Conway, SC on October 20, 2023.  Temple made a down payment of $15,000 towards the total purchase price of $60,338.50 with the remainder financed through Ally Financial.

g.    In February 2024, DEA subpoenaed purchase records and interviewed a salesman at Keffer Chrysler, Dodge, Jeep in Charlotte, North Carolina.  Temple contacted the dealership and purchased a 2023 Dodge Charger Hellcat in April 2023.   Temple handled the purchase and listed Tisdale as the purchaser and himself (Temple) as the co-purchaser.  A down payment was made in the amount of $40,000 and the total sales price for the Hellcat was $134,907 with the sales agreement dated April 13, 2023.   In the finance application documents for the remaining amount due, Tisdale's employment was listed as a Manager Assistant making $5,000.00 per month. Temple listed his employment as a manager employed by Enchanted Recovery Services making $15,000.00 per month.  These employment claims are inconsistent with the recent purchase and re-finance applications on the 2021 Dodge Charger.

h.    A short time after the Hellcat was purchased, Temple again contacted the Keffer dealership and ordered a 2023 Dodge Durango SRT Hellcat.  After the  Durango

Hellcat arrived, the sales transaction was completed on  it in August 2023 with a total sales price of $111,585.00. Temple was listed as the purchaser and Tisdale listed as the co-purchaser with a $10,000.00 down payment made towards the purchase.   In the finance application records for the Durango Hellcat, Temple and Tisdale both listed their employer as Enchanted Recovery Services.  Temple listed an income of $15,000.00 per month and Tisdale listed an income of $5,000.00 per month.

i.   A review of records and documents showed that a new 2021 Dodge Charger Hellcat was purchased September 17, 2021, from Addy's Harbor Dodge in Myrtle Beach, SC.  Temple was listed the buyer and Tisdale as the co-buyer.  A $26,600 down payment was made towards the total purchase price of $80,417, with the balanced financed through Capital One Auto Finance.  In May 2022, Temple opened an account at Carolina Trust Federal Credit Union with Tisdale listed on the account.  The 2021 Dodge Charger Hellcat was then re-financed at that institution in the amount of $39,441.01. Temple listed his employment as crypto day trading with a $16,500.00 monthly salary and Tisdale noted she worked for SC Candles with a $5,000.00 monthly salary.  A review of the loan records revealed that beginning in January 2023, a series of cash payments were made towards the loan on the 2021 Dodge Charger Hellcat at the credit union including the following payments: 01/20/2023 - $2120 US Currency; 02/03/2023 - $1960 US Currency; 02/07/2023 - $6640 US Currency; 02/08/2023 - $4000 US Currency; 03/02/2023- $8900 US Currency; 03/03/2023 - $1630 US

Currency; 03/06/2023 - $3870 US Currency; 03/07/2023 - $1280 US Currency. The vehicle loan was paid in full March 7, 2023. Documents filed with the SC Department of Motor Vehicles show Temple and Tisdale claimed they sold the 2021 Dodge Charger to Ramon Martinez for $50,000.00 on April 26, 2023.

j.    This investigation determined that Temple and Tisdale purchased the following during the period 2021 through 2023:

| Property | Date purchased | Purchase price | Downpayment(s) with remainder financed |
|---|---|---|---|
| Real property at 68 Shamrock Dr., Sunset Beach NC | 1/7/21 | $165,000 | $9,950 |
| 2021 Dodge Charger Hellcat* | 9/17/21 | $80,417 | $26,600 |
| 2023 Dodge Charger Hellcat | 4/13/23 | $134,907 | $40,000 |
| 2020 Chevrolet Silverado | 10/20/23 | $60,338.50 | $15,000 |
| 2023 Dodge Durango Hellcat | August 2023 | $111,585 | $10,000 |

k.    An examination of bank statements from four bank accounts held in Temple's name and/or Tisdale's name show activity consistent with money laundering. One Conway National Bank checking account (*2306) was held in the name of Temple. One Conway National Bank checking account (*7406), one South State bank checking account (*5804), and one United Bank checking account (*7616) were held in the name of Tisdale. Both Temple's and Tisdale's accounts reflected an address at 119 Pier Pointe Dr., Little River, SC. Examination of the bank accounts indicated the following:

(1)    During 2021, Tisdale received $9,700.00 in South Carolina unemployment insurance/pandemic unemployment assistance (UI/PUA) Investigators identified from bank records that Temple received $8,416.00 in North Carolina UI/PUA benefits in 2021; however, he reported to the South Carolina Department of Revenue on his 2021 South Carolina Nonresident Schedule that he received $9,344.00 in unemployment benefits.

(4)    On April 15, 2021, Paycheck Protection Program (PPP) loan proceeds of $5,156.00 were made into the Conway National Bank checking account (*7406) held in Tisdale's name.

(5)    Examination of Temple's Conway National Bank checking account (*2306) was negative for regular deposits indicative of regular wages or earnings from an employer. However, on March 2, 2021, four checks totaling $1,134.07 from R.L. Carriers Shared Services payable to Temple, were made into the Conway National Bank checking account (*2306) held in Temple's name.

(6)    Examination of Temple's Conway National Bank checking account (*2306) reflected numerous purchases of shoes, which the investigation indicated was part of an online shoe re-sale business. To date, DEA has been unable to discern the amount of income derived from the sale of shoes or other goods. The amount of shoe purchasing activity, however, was inconsistent with the amounts of cash deposits made into Temple's Conway National Bank checking account (*2306). Moreover, online shoe sales are inconsistent with

the receipt of cash payments.

(7)    Conway National Bank employees advised that Tisdale alleged that the bulk
currency deposits she made were associated with candle sales. Such
statements demonstrate a desire to conceal or disguise the nature, the location,
the source, the ownership, and the control of the criminally derived proceeds
of narcotics trafficking.

(8)    During 2021, cash deposits into four accounts associated with **Temple** and
Tisdale totaled $336,627.38. Deposits of U.S. currency into Temple's
Conway National Bank checking account (*2306) included 37 deposits
totaling $93,904.84. Deposits of U.S. currency into Tisdale's Conway
National Bank checking account (*7406) included 28 deposits totaling
$66,095.00. Deposits of U.S. currency into Tisdale's South State Bank
checking account (*5804) included 23 deposits totaling $51,215.00.
Deposits of U.S. currency into Tisdale's United Bank checking account
(*7616) included 142 deposits totaling $125,412.54.

(9)    Analysis of deposits made into the four accounts during 2021 indicated
instances in which deposits were made into multiple accounts by either
Tisdale or **Temple** or both in amounts under $10,000.00, indicative of
structuring-transactions designed to conceal or disguise the nature, the
location, the source, the ownership, and the control of the proceeds and to
avoid a transaction reporting requirement under federal law-a violation of

18 U.S.C. § 1956(a)(l)(B)(i) and (ii).

(10)    Tisdale received South Carolina unemployment benefits between January 20, 2021 through June 28, 2021. During the same time period, she made cash deposits, separate from the unemployment benefits referenced above, into Temple's Conway National Bank checking account (*2306), her Conway National Bank checking account (*7406), and her South State Bank checking account (*5804) totaling $85,875.00. ATM deposits into Tisdale United Bank account (*7616) totaled an additional $12,645.

(11)    **Temple** received North Carolina unemployment benefits from July 28, 2021 through September 8, 2021. During this same period, he made cash deposits totaling $10,550 into his Conway National Bank account (*2306).

(12)    During 2022, cash deposits into the four accounts associated with Tisdale and **Temple** totaled $215,428.93. Deposits of U.S. currency into **Temple's** Conway National Bank checking account (*2306) included 49 deposits totaling $113,827.00. Deposits of U.S. currency into Tisdale's Conway National Bank checking account (*2306) included 27 deposits totaling $54,090. Deposits of U.S. currency into Tisdale's South State Bank checking account (*5804) included 14 deposits totaling $43,290.00. Deposits of U.S. currency made into Tisdale's United Bank checking account (*7616) included six deposits totaling $4,221.93.

(13)  Analysis of deposits made into the four accounts during 2022 revealed instances in which deposits were made into multiple accounts by either Tisdale or Temple, or both, in amounts under $10,000.00, which is indicative of structuring-transactions designed to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds and to avoid a transaction reporting requirement under federal law-a violation of 18 U.S.C. § 1956(a)(l)(B)(i) and (ii).

(14)  During 2023, cash deposits into the three accounts associated with Temple and Tisdale totaled $159,203.00. Deposits of U.S. currency into Temple's Conway National Bank checking account (*2306) included 21 deposits totaling $79,285.00. Deposits of U.S. currency into Tisdale's checking Conway National Bank account (*7406) included three deposits totaling $9,933.00. Deposits of U.S. currency into Tisdale's South State Bank checking account (*5804) included 31 deposits totaling $69,985.00.

(15)  Analysis of deposits made into the three accounts during 2023 indicated instances in which deposits were made into multiple accounts by either Tisdale or Temple or both in amounts under $10,000.00, indicative of structuring - transactions designed to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds and to avoid a transaction reporting requirement under federal law - a violation of 18 U.S.C. §1956 (a)(l)(B)(i) and (ii).

(16)  During the three-year period 2021 through 2023, cash deposits into the four

accounts totaled $711,259.31.

(17)  During the three-year period 2021-2023, a minimum of $117,879.62 in peer-to- peer (P2P) transactions were deposited into accounts held by Temple and Tisdale. These P2P transactions were from Apple Cash, Apple Cash/Temple, Cash App, Cash App/Temple, Square, Square/Temple, Cash App/KayLahh [sic], Paypal/Temple, VENMO/Temple, Paypal/Tisdale, and Zelle.

(18)  During the three-year period 2021-2023, a total of $240,434.32 was debited from accounts held by Temple and Tisdale and invested in cryptocurrency accounts, including Coinbase (Temple), Coinbase (Tisdale), and Crypto.com.

(19)  On July 13, 2022, Temple made a $2,720.00 payment by check to Money Metals Exchange.

l.  While Temple was incarcerated at the Horry County SC Detention Center, Temple and Tisdale spoke by telephone via the jail telephone system, which uses a greeting message at the beginning of each call notifying the parties that the calls are recorded and subject to monitoring.  During these calls Temple and Tisdale discussed movements of currency on cryptocurrency trading platforms, payments of credit cards, and their purchase, possession, and sale of gold and silver commodities. On January 26, 2024, Temple and Tisdale held various telephone calls during which they discussed selling a quantity of gold and silver commodities, in the form of bars/coins. During their conversations, Temple made statements such as "Go and handle business with Shawn and Jerry and get our money, for our assets." During a later call, Temple told Tisdale, "told you what to do, I didn't tell you to give it

away." Tisdale replied by stating, "I made almost 30 Grand."

n. During a call on February 8, 2024, Temple told Tisdale, "Did you get the crypto off, that's gotta be off quick because the guys want my fucking phone." Tisdale explained she had not, and Temple then told her, "Go on the account now and let's try to send it off, please." In further calls on that same day, they continued to discuss attempts to unlock Tisdale's Coinbase account, transferring funds and logging into Crypto.Com. In one conversation Temple directed Tisdale to look at his account in an attempt to move funds and told her, "just sent some last week to somebody, I know it works." When Tisdale asked about the comment, Temple responded, "sent it to fucking Rock, to buy the fucking shit from him." "What the fuck else would I use it for." In this reference, DEA was aware Temple was referring to a payment for narcotics purchased from an individual known as "Rock" and he (Temple) utilized crypto-currency for the payment. Tisdale replied, "don't, I didn't know, I mean there's a shit ton of wallets in here." DEA was aware Tisdale was discussing various wallets which are digital, financial storage and transaction applications for conducting crypto- currency storage, exchanges or transactions.

o. During calls on February 16, 2024, Temple and Tisdale continued to discuss the transfer of funds. During one call Temple stated, "You can top off my card, my crypto.com card and you can pull shit off like that too now. You can go to the top up part and add funds." Conversation ensued around Tisdale creating a new Robinhood account. Robinhood is a financial platform utilized to trade crypto-currency funds as well as stock, exchange traded funds (ETF) and other holdings.

After Tisdale acknowledged she had successfully created a Robinhood account and tested it by sending $100.00 to the account, Temple told her, "Alright, send it all off. Send it all off right now. " Temple was referring to funds held in one of his accounts.   Temple stated, "Send seventeen five, to your Robinhood right now." After Tisdale acknowledged the transaction was complete, Temple then directed her to send "2500" to her bank account so she could pay bills. During calls on February 17, 2024, Tisdale stated, "Total in Robinwood, 17,000 and some change." Temple replied, "Did you move the other to the top up card, so you can use it for gas or bills or whatever?" Tisdale stated, "was attempting to do that, but it wasn't letting me, so kinda walk me through that." Temple gave Tisdale instructions and subsequently said, "Just send the rest off to your account." Temple then told Tisdale to call her "other one" so she could get that wallet unlocked.   Temple was referring to Tisdale's Coinbase account which in previous conversations was discussed being locked and currently unusable.

p.     The foregoing transactions are consistent with money laundering activity. While legitimate business activity has been identified by Temple and Tisdale, the purported legitimate business activity cannot explain the volume of cash and other transactions identified.

q.     Pursuant to 18 U.S.C. § 981 DEA seized the Defendant Property.

r.     An appraisal of the Defendant Property confirmed the Assorted Quantity of Gold/Silver Bullion Bars, to be valued at $41,227.00.

s.     On June 11, 2024, DEA along with local law enforcement officers traveled to and

met with Tisdale at her residence, 68 Shamrock Drive, Sunset Beach, NC in order to execute seizure warrants on three vehicles in the ongoing investigation as well as deliver a target letter to Tisdale. Tisdale was provided and acknowledged receipt of a federal target letter from the United States Attorney's Office in the District of South Carolina. Tisdale was asked and subsequently provided both verbal and written consent to search the home, 68 Shamrock Drive, Sunset Beach, NC. During a thorough search of the home, various items of evidentiary value were seized including: a quantity of gold/silver bars/coins/bullion (Defendant Property); apx. 28.1 grams of a white powder (suspected cocaine); 56 dosage units/tablets (suspected Acetyl-Fentanyl); apx. 14.3 grams of powder (suspected Acetyl-Fentanyl); apx. 6.7 grams of a powder substance (suspected methamphetamine); apx. 221 grams of a green plant like substance (suspected marijuana); along with various other suspected narcotics.

8.      Based on the information and allegations set forth herein, there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Property constitutes, or is traceable to:

a.      money furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act; proceeds traceable to such an exchange; or money used and intended to be used to facilitate a violation of the Controlled Substances Act;

b.      property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or § 1956(a)(1)(B)(i) and/or 1957;

Page 17 of 19

c.    property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960;

d.    proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(c)(7); and/or proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h).

## <u>CONCLUSION</u>

9.    By reason of these premises, and pursuant to 18 U.S.C. § 981(f) and 21 U.S.C. § 881(h), whereby the Plaintiff's right, title and interest in and to the Defendant Property relates back to the commission of the act giving rise to the forfeiture, the Defendant Property has become and is forfeited to the United States of America, to be disposed of pursuant to Supplemental Rule G(7)(c) for Admiralty or Maritime Claims and Asset Forfeiture Actions, 18 U.S.C. § 981(d), 21 U.S.C. § 881(e), and other applicable laws.

THEREFORE, Plaintiff prays that due process issue to enforce the forfeiture of the Defendant Property, *in rem*; that a Warrant for the Arrest of the Defendant Property be issued; that due Notice be given to all interested persons to appear, make claim, answer and show cause why the forfeiture should not be decreed; that the Defendant Property be decreed condemned and forfeited to the United States of America for disposition according to law; and that Plaintiff have such other and further relief as the Court may deem just and proper, together with the costs and disbursements of this action.

[SIGNATURE PAGE TO FOLLOW]

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By:  *s/Carrie Fisher Sherard*
Carrie Fisher Sherard #10134
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, SC 29601
(864) 282-2100